Filed 3/19/13  P. v. Burke CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GARFIELD BURKE, <br><br> Defendant and Appellant. | D060899 <br><br><br><br> (Super. Ct. No. SCE302930) |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Reversed and remanded for a new trial.

A jury convicted Garfield Burke of two counts of committing a lewd act upon Terese G., a child under the age of 14, in violation of Penal Code section 288, subdivision (a) (counts 3 & 8).  As to count 3, the jury found true an allegation that Burke had engaged in substantial sexual conduct with a child under 14 years of age during the commission of that crime (Pen. Code, § 1203.066, subd. (a)(8)).  The amended information had charged Burke with six additional counts of committing a lewd act upon Terese in violation of Penal Code section 288, subdivision (a) (counts 1-2 & 4-7).  The

jury was unable to reach a verdict as to those six counts, and the court declared a mistrial and dismissed them.  The court later sentenced Burke to an aggregate prison term of 10 years, consisting of the upper term of eight years as to count 3, plus a consecutive term of two years (one-third the middle term of six years) as to count 8.

Burke appeals, contending (1) the court violated his federal constitutional right to due process and prejudicially abused its discretion under Evidence Code sections 1108 and 352 (all further statutory references are to the Evidence Code unless otherwise specified) by admitting as section 1108 propensity evidence two thumbnail images of suspected child pornography found in unallocated space on the hard drive of a computer seized from his home pursuant to a search warrant; (2) the search of the computer was not supported by probable cause, and, thus, the court improperly admitted the two images which were the fruit of an unlawful search; (3) other evidentiary and instructional errors combined to deny him his federal constitutional right to due process; (4) the court's cumulative errors warrant reversal; and (5) imposition of the upper term as to count 3 violated *Apprendi v. New Jersey* (2000) 530 U.S. 466.

We reject Burke's claim that a trial court's admission of propensity evidence under section 1108 constitutes a denial of due process under the Fourteenth Amendment to the federal Constitution, but conclude the court prejudicially abused its discretion under sections 1108 and 352 by admitting the two thumbnail images of child pornography, as the de minimus probative value of this inflammatory evidence was substantially outweighed by the probability that its admission would necessitate undue consumption of time and create a substantial danger of undue prejudice and of confusing the issues.

2

Accordingly, we reverse the judgment and remand the matter for a new trial. In view of our conclusion, we need not, and do not, address Burke's remaining contentions.

FACTUAL BACKGROUND

A. *The People's Case*

The parents of Terese G., who was 13 years of age at the time of trial in August 2011, were divorced in 2008. Terese and her sister continued to live with their mother after their parents separated.

Burke's wife, Debra,[1] is the maternal aunt of Terese's mother (Mother). Thus, Terese is the grandniece of Burke and Debra.

During Mother's marriage to Terese's father (Father), they would take Terese and her sister to visit Burke and Debra at their home in El Cajon two or three times a year. Only Burke and Debra lived in their home. Terese was about three years old when she and her family first visited Burke and Debra in 2001. Father stopped accompanying the family during these visits when he and Mother separated. The last time Terese went to Burke's home was in early 2006 when Terese was 8 years old.

Terese testified that Burke sexually molested her during these visits numerous times over the course of several years. Terese disclosed the molestations in the summer of 2007, when she was nine years old, about a year and a half after her last visit. Mother testified that a month or two before this, Terese "acted a little different," she "wasn't as bubbly," and she "wasn't herself." Terese told Mother that Burke had "touched [her]

---

1     As Burke and his wife Debra share the same last name, we shall refer to Mrs. Burke by her first name. We intend no disrespect.

3

private," and she thought she might be pregnant. Mother asked Terese why she waited so long to tell her about it, and Terese replied, "Because he told me he was going to hurt me." Mother reported the molestation to the police.

Deputy Paul Ward of the San Diego County Sheriff's Department interviewed Terese in March 2009. Mother was present during the interview. Deputy Ward was not concerned about Mother's presence because Terese, who was then 11 years of age, seemed mature and articulate, and she wanted her mother to be present. Deputy Ward attempted to have Terese place a controlled (monitored and recorded) phone call to Burke. However, when Mother called Debra to ask for Burke's phone number, she was unable to get the number.

Deputy Ward obtained a search warrant and, in early 2010, he and several other officers searched Burke's home and seized two computers ─ one registered to Burke and the other to Debra ─ pursuant to that warrant. A forensic examination of the computers revealed that Burke's computer contained previously deleted "questionable images,"[2] in unallocated space on the hard drive of what appeared to be child pornography depicting females under the age of 18 possibly engaging in lewd acts. Two of the images (discussed more fully, *post*) were shown to the jury.

Detective Provence also testified that, due to the location of the images in unallocated space on the hard drive of the computer, it was not possible to determine

---

[2]     Michael Provence, the detective who examined Burke's computer, testified that a "questionable image" is an image that, based on his training and experience, he suspects depicts one or more persons under the age of 18 years engaging in lewd activities.

4

whether the images were ever viewed, when the image files were accessed, or how or when the images arrived on the computer.

At trial, Terese testified that Burke had molested her about 10 times. The first incident occurred when she was about four years old. Burke took her to the longer of two trailers on his property and placed his hands under her shirt, touching her chest with his bare hand. Burke repeated this conduct on several occasions, once kissing Terese on the lips while rubbing her chest.

Terese also testified that Burke touched her vagina on at least four occasions in one or the other of the trailers when she was between the ages of six and eight. The first time Burke touched her vagina, they were in the smaller trailer, she was six years old, and he touched her vagina with his hand. After taking Terese into the trailer, Burke rolled down her pants and underwear and then rubbed her vagina with his hand. Afterward, Burke told her something along the lines of, "Don't tell anyone. Don't say anything or else I'll . . . hurt someone" or "I'll do something." Terese testified she "took that threat very seriously," and she "thought he was going to hurt [her] little sister."

Terese also testified that the second time Burke rubbed her vagina with his hand, he again rolled her pants and underwear down to her ankles. During one of the touchings in the smaller trailer, Burke pulled her pants and underwear down as she was lying down and then put his tongue on her vagina.

The final molestation occurred when Terese was eight years old. Terese testified that Burke took her to the larger trailer and, as she was lying on the table, he rolled down

5

her pants bottoms and underwear, exposed his penis, and then rubbed his penis on her vagina, but did not put his penis inside her vagina.

Catherine McLennan testified as an expert on child sexual abuse. She explained the various factors that affect the timing and substance of a child victim's disclosure. The closer the relationship children have with the abuser, the less likely they will say anything. Younger children tend to wait longer before making disclosures. One reason for delay, particularly with younger children, is that they believe they will get in trouble.

McLennan also testified it is not unusual for children who are sexual abuse victims to make "incremental disclosures" by later providing additional information they did not talk about in the initial forensic interview. This can happen because the child is very young and has forgotten part of the information or because the child feels shame or embarrassment about having been involved with anal touching or oral genital contact. McLennan explained factors that can result in seemingly inconsistent statements and testified that, while the highest level of suggestibility is found in very young children of preschool age, this trait lessens over time and children are considered about equal with adults in the level of suggestibility when they reach the age of about nine or 10.

B. *The Defense Case*

The defense played for the jury the audio recording of Deputy Ward's March 23, 2009 interview of Terese, a transcript of which was provided to the jurors. Terese told Deputy Ward that the first incident occurred in one of the trailers, which she described as a camping trailer that "you can pull," when she was four years old and Mother and Debra, left and went somewhere. Burke put Terese on the table inside the trailer and pulled off

6

her pants and underwear. Terese told Deputy Ward that Burke then "touched [her] inappropriately." Deputy Ward asked her whether Burke put his hand on her vagina, and she indicated he had, adding that "[h]e just touched there, and that was pretty much it, and then we went back inside." Deputy Ward asked her, "Was there any other kind of touching during that incident?" Terese replied, "No." She also told Deputy Ward the incident took about five minutes, Burke helped her put her clothes back on, and then he told her not to tell anyone or else he would hurt her.

Terese told Deputy Ward the next incident occurred when she was between five and seven years old. Burke asked her to go with him outside to get firewood and then took her into the smaller trailer. Debra and Mother and Father were in the house. Terese said Burke told her to take off her shirt and pants, but not her underwear, and then he rubbed her chest. Burke did not touch her anywhere else. The incident took about five minutes and, as she was putting her clothes back on, Burke again told her he would hurt her if she told anyone.

Terese said the next incident occurred when she was eight years old. Burke took her into the larger trailer where the first incident occurred. Burke asked whether she wanted to help him clean the trailer. Terese said, "Okay," and got the Windex. As she was cleaning the table, Burke laid a blanket down on the table. Terese said she sat on the blanket because she was tired, and Burke then pushed her back into a "laying position" and touched her "inappropriately again." Terese told Deputy Ward that Burke forced her to take off her shirt. The first time he told her to take off her short she said, "No." Burke then said, "[T]ake it off or else." Terese said she took off her shirt, and Burke started

7

rubbing her chest, which "had developed."  Burke told her to take off her pants, and she pulled her pants and underwear down to her ankles.  Burke then pulled his pants and underwear down to his ankles.  Terese told Deputy Ward that Burke put his "privacy parts" on hers.  Deputy Ward asked Terese to be specific, and she told him Burke rubbed his penis on her vagina for about two minutes, but his penis did not go inside her vagina. Burke did not touch her anywhere else.  Burke told Terese to put her clothes back on.  As they were walking back to the house, Burke told her, "[I]f you tell anybody I'll hurt your mom."  Terese told Deputy Ward that was the only time Burke touched her vagina with his penis.  She indicated Burke had rubbed her chest about seven times, and said he rubbed her vagina with his hand "about two other times."  Deputy Ward asked, "[S]o we're saying about ten total incidents, right?"  Terese replied, "Yeah."

Deputy Ward told Terese he wanted to ask her about the very last incident.  Terese replied, "It's where he rubbed my chest and I had developed a lot."  She told Deputy Ward she was about nine years old when it happened.  Burke invited her to go down to the "tunnel," a corrugated metal flood control drain under the driveway, to see "the trolls."  After they went there, Burke and Terese went into the larger trailer.  Burke told her to take off her shirt, she complied by taking off her shirt and bra, and Burke then rubbed her chest.  He did not touch her anywhere else, and the incident lasted about four minutes.  Burke left the trailer without saying anything, and Terese then put her bra and shirt back on.

Burke testified briefly on his own behalf that he had been married to Debra for 21 years, he was employed in the motion picture industry as a grip, and he was licensed as

8

an emergency medical technician. He stated that although he had taken Terese and her sister one time into the larger trailer on his property, he was never alone with Terese, he never touched her in a sexual manner, and he never made threats to her.

Debra, testified she is a registered nurse, a trained sexual assault nurse examiner, and a mandated reporter of sexual abuse. They had a desktop computer, which was not password protected, in the guest bedroom, and they also had a laptop computer. The laptop was hers. Debra's sister's two sons had access to the desktop computer and played games on it. Debra testified to various family gatherings at which five children typically would be present.

Debra stated that her niece has two daughters, one of whom is Terese. Her niece and Terese and her sister had visited her and Burke at their home at least half a dozen times. Terese, who was very precocious for her age, and her sister would stay together when they came to visit. Debra testified that, to her knowledge, Burke was never alone with Terese and her sister. She and Burke do not use the larger trailer because the floor is falling in. They use the smaller trailer, a camper shell, to haul recycling.

Mark Lajoie, a character witness, testified he used to work with Burke. He saw Burke interact with children on numerous occasions, and he never saw him act inappropriately toward children. It was his opinion that Burke does not have a sexual interest in children.

Digital forensic examiner Josiah Roloff testified there was no evidence Burke or any other user of his computer knew about or had sought out and intentionally viewed the images of child pornography found on the computer.

9

Psychologist Bradley McAuliff testified about how incorrectly interviewing a child sexual abuse victim can lead to false accusations.

Linda Scheible testified she had known Burke for about 26 years. She has a daughter, Lisa,[3] who at the time of trial was 28 years old. Over the years, Linda and her family, including Lisa, visited Burke and his wife, and they typically spent a week at their home. Linda had never seen Burke act inappropriately towards Lisa. It was Linda's opinion that he does not have a sexual interest in children.

Lisa testified that Burke has never acted inappropriately towards her. (1 RT 349.) It was her opinion that Burke does not have a sexual interest in children.

DISCUSSION

I. *ADMISSION OF TWO THUMBNAIL IMAGES* (§§ *1108 & 352*)

Burke contends the court violated his federal constitutional right to due process and prejudicially abused its discretion under sections 1108 and 352, by admitting as section 1108 propensity evidence two thumbnail images of suspected child pornography found in unallocated space[4] on the hard drive of a computer seized from his home pursuant to a search warrant. We conclude the admission of the challenged section 1108

---

[3]    As Linda Scheible and Lisa Scheible have the same last name, we refer to them by their first names. We intend no disrespect.

[4]    "Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software. Such space is available to be written over to store new information." (*United States v. Flyer* (9th Cir. 2011) 633 F.3d 911, 918.)

propensity evidence, including the two images, was prejudicial error that requires reversal of the judgment and remand for a new trial.

A. *Background*

1. *The two thumbnail images*

A forensic examination of the two computers seized from Burke and Debra's home pursuant to a search warrant revealed that Burke's computer contained previously deleted questionable images[5] ─ found in unallocated space on the hard drive ─ of what appeared to be child pornography depicting persons under the age of 18 possibly engaging in lewd acts. Pertinent here are the two images that the court, in an in limine ruling (discussed, *post*), permitted the prosecutor to show to the jury over a defense objection. One of the images depicted a young smiling girl, standing apparently naked from the waist down, with the words "Home Lolita" on the picture. The second image depicted a young girl sitting on a bed with her legs spread apart, with a partially peeled banana in her mouth, and wearing a red and white top and a red plaid skirt that is pulled up so as to expose her genitalia.

2. *The parties' in limine motions*

In its trial brief, the prosecution brought a motion in limine under both section 1108 and section 1101, subdivision (b) (hereafter section 1101(b)) to admit and publish to the jury three of the alleged child pornography images found in unallocated space on the hard drive of Burke's computer. The prosecution argued the evidence of the images was

_____

[5]    See footnote 2, *ante*.

11

admissible under those sections and section 352 because they tended to prove that Burke was sexually attracted to young girls, demonstrated he would have had an interest in engaging in sexual acts with Terese, and were "probative to [his] intent, motivation and plan to have sexual contact with [her]."

Burke filed his own motion in limine, asserting the evidence of child pornography found on the computer seized from the guest bedroom of his home should not be admitted. Specifically, he argued that (1) the images did not fall within section 1108 because they "[did] not depict minor females"; (2) the images were inadmissible under section 1101(b) to prove "[his] intent and motive in committing the molestation offenses" because the prosecution was "seeking . . . to introduce highly inflammatory evidence to prove an issue about which there [was] no meaningful dispute"; (3) even if the images were admissible under sections 1108 and 1101(b), they should be excluded as unduly prejudicial under section 352; (4) there was no evidence Burke knowingly possessed the images, because other people had access to the computer; (5) the charged offenses (Pen. Code, § 288, subd. (a))) and the uncharged possession of child pornography offense (Pen. Code, § 311.11(a)) were not similar because they involved different victims, and the charged offenses involved assaultive conduct while the uncharged offense involved possession of contraband; and (6) the trial of the uncharged possession offense would be time-consuming and distracting.

3. *Hearing and ruling*

At the pretrial hearing on these motions, the court stated that its "biggest problem" was whether there was a "sufficient nexus" between "[Terese's] age and whatever is

shown on those thumbnail images."  Defense counsel, who acknowledged that only Burke and Debra lived in the house and Burke was the registered owner of the computer, argued the evidence of the images should be excluded under section 352, and their admission would violate Burke's right to a fair trial because the images were highly inflammatory.  Burke's counsel asserted that "we don't know how these images . . . arrived on the computer.  They're in the unallocated part of the computer."  He also argued it was not known whether Burke "or anyone ever viewed those images because this computer was not password protected, and there will be testimony that many people had access to this computer that would stay at the house, including Terese's father who . . . has been convicted of sex with an underage minor . . . , and his conviction certainly demonstrates a propensity or an interest in that age of child we see on the computer . . . ."  Burke's counsel also asserted, "I don't think an expert can tell you that these photos on the unallocated space were viewed by anybody, and I don't think an expert will tell you that the website Lolita was necessarily accessed."

The prosecutor argued that Terese's father stopped going with her to Burke's home in 2005, and forensic evidence would show the installation date for Burke's computer was 2008.  The prosecutor acknowledged that "no expert can testify as to how the images got on the computer" and that the prosecution's expert "can't say for sure that they were viewed."  The prosecutor asserted, however, that "the computer automatically makes thumbnails" when photographs are downloaded, and "the computer is [Burke's] and only [Burke] and his wife, who had her own laptop, and that was looked into, and nothing was found on hers, they're the only ones that lived there."

13

a. *Court's in limine ruling and admission and publication of the images at trial*

Addressing the prosecutor (Claudia Grasso), the court ruled that two of the three images (discussed, *ante*) were admissible, stating:

> "The record shall reflect I've viewed the three photographs, and based upon my view, it appears at least the first two photographs portray girls who appear to be minors and within that threshold of an age where I feel you can prove, Miss Grasso, intent or motive. The third, however, that photograph, under [section] 352 I'm going to sustain the defense objection. She appeared to be a girl in her late teens, and while her hair is fixed in such a manner to maybe suggest that she's younger, I am going to exclude it under [section] 352, and the Court should state for the record that the case that is the most important in this case is the [*People v. Memro*[6]] case from 1995 in a murder in which the Court did allow similar photographs of young naked boys involving the death of a young minor, and the Court ─ under the same analysis, I find that it is *probative*, and *under a [section] 352 analysis the Court will allow you to present evidence of the first two thumbnails*, and I'm not persuaded by the fact that other people might have had access. I don't find that that is going to be the basis of the Court's decision and whether or not he viewed them. It's possession, control, and it's up to you to prove whether or not [there is a] connection as to intent and motive, and I'm going to allow you to have that opportunity. So overruled as to the first two thumbnails, granted—the defense motion is granted as to this third photograph." (Italics added.)

Responding to this ruling, defense counsel asked the court whether it was "finding the People made a showing that there's some evidence that Mr. Burke may have put these photos in the unallocated space?" The court replied:

> "*I'm not making that finding. I don't think a computer expert can make it, and I certainly can't*, but I'm accepting that he had

---

6    *People v. Memro* (1995) 11 Cal.4th 786, 864-865 [evidence of defendant's uncharged conduct of possessing sexually explicit photographs of young males ranging from prepubescent to young adult admissible under section 1101(b) to show intent to sexually molest young boy].

possession and control of the computer, it was registered in his name, only two individuals lived in that house, and . . . there is going to be evidence that the wife had her own laptop, and so that leaves [Burke] with the potential of having his own office/guest room having the computer, and *I find that he has access, possession, and control, and that's sufficient* for allowing in my mind evidence of that under [section] 1108 evidence motive intent."   (Italics added.)

At trial, during the People's case-in-chief and following the testimony of Detective Provence who examined Burke's computer, the two child pornography images were shown to the jury and received in evidence.

B.  *Applicable Legal Principles*

1.  *Sections 1108 and 352*

As a general rule, evidence of a person's character is inadmissible to prove conduct on a specific occasion.  (§ 1101, subd. (a) (hereafter section 1101(a)); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).)  Thus, evidence of other crimes or bad acts is generally inadmissible when it is offered to show a defendant had the criminal disposition or propensity to commit the crime charged.  (§ 1101(b); *Ewoldt,* at p. 393.)

However, an exception to this rule is set forth in section 1108, subdivision (a), which provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Section 1108 allows admission, in a criminal action in which the defendant is accused of one of a list of sexual offenses, of evidence of the defendant's commission of another listed sexual offense that otherwise would be made inadmissible by section 1101(a).  (See § 1108, subds. (a), (d)(1).)

15

The uncharged and charged offenses are considered sufficiently similar if they are both sexual offenses enumerated in section 1108. (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41.) Accordingly, here, evidence that Burke possessed or controlled child pornography in violation of Penal Code section 311.11, subdivision (a) (hereafter Pen. Code section 311.11(a))[7]—one of the enumerated sexual offenses listed in subdivision (d)(1) of section 1108—was admissible to prove he had a propensity to commit the relevant charged and listed offenses of which he was convicted (counts 3 & 8: Pen. Code, § 288, subd. (a)) unless that evidence was inadmissible under section 352. (§ 1108, subd. (a).)

As the Supreme Court stated in *People v. Falsetta* (1999) 21 Cal.4th 903, in determining whether to admit section 1108 propensity evidence, trial courts "must engage in a careful weighing process under section 352 [by considering] such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less

---

7    Penal Code section 311.11(a) provides in part: "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony."

16

prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. " (*Falsetta,* at p. 917.) The *Falsetta* court held that section 1108 does not violate due process principles, and, thus, is constitutionally valid, because it subjects evidence of uncharged sexual misconduct to the weighing process of section 352 in sex crime prosecutions. (*Falsetta,* at pp. 907, 917-918, 922.)

Under section 352, which is referenced in section 1108, evidence is properly excluded "if its probative value is 'substantially outweighed' by the probability that its admission will [] necessitate undue consumption of time [] or create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352; *People v. Cudjo* (1993) 6 Cal.4th 585, 609.) A decision to exclude evidence under section 352 comes within the trial court's broad discretionary powers and "will not be overturned absent an abuse of that discretion." (*People v. Minifie* (1996) 13 Cal.4th 1055, 1070.)

"The prejudice which exclusion of evidence under [section 352] is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in [section 352] applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "'In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the

17

emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 286.)

2. *Standard of review*

On appeal, we review the trial court's admission of section 1108 evidence, including its section 352 weighing process, for abuse of discretion. (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104-1105; *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1097.) "We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling ' "falls outside the bounds of reason." ' " (*Dejourney*, at p. 1105.) Alternatively stated, we will not reverse a trial court's exercise of discretion under sections 1108 and 352 unless its decision was "arbitrary, capricious, or patently absurd [and] resulted in a manifest miscarriage of justice." (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286; *People v. Wesson* (2006) 138 Cal.App.4th 959, 969; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

C. *Analysis*

1. *Constitutional challenge*

Burke first contends that a trial court's admission of propensity evidence under section 1108, as occurred in this case, constitutes a denial of due process under the Fourteenth Amendment to the federal Constitution. We reject this contention because our Supreme Court held to the contrary in *People v. Falsetta*, *supra*, 21 Cal.4th at pages 916-922, and we are bound by that holding (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455).

18

2. *Section 352*

Burke alternatively contends the court's admission of the two images found in the unallocated space of the hard drive of the computer found in the guest bedroom of his home was prejudicial error under section 352. We conclude the court prejudicially abused its discretion by admitting the two thumbnail images and related evidence under sections 1108 and 352, as the de minimus probative value of this inflammatory evidence was substantially outweighed by the probability that its admission would necessitate undue consumption of time and create a substantial danger of undue prejudice and of confusing the issues.

*Probative value*

"'On the issue of probative value, materiality and necessity are important. The court should not permit the admission of other crimes until it has ascertained that the evidence *tends logically and by reasonable inference to prove the issue upon which it is offered*, that it is offered on an issue material to the prosecution's case, and is not merely cumulative.'" (*People v. Harris* (1998) 60 Cal.App.4th 727, 739-740, italics added, quoting *People v. Stanley* (1967) 67 Cal.2d 812, 818-819, fns. omitted.) Also, as our Supreme Court explained in *Falsetta*, in determining whether to admit evidence of a section 1108 propensity offense trial courts must engage in a careful weighing process under section 352 by considering, among other factors, "the degree of certainty of its commission." (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.)

Here, the probative value of the evidence of the two thumbnail images was de minimus as it had little, if any, tendency to logically and by reasonable inference prove

19

the issue upon which it was offered.  The prosecution offered this evidence under section 1108 to prove Burke had committed the uncharged crime of possessing child pornography in violation of Penal Code section 311.11(a), and thereby circumstantially prove he was sexually attracted to young girls and would have had an interest in engaging in sexual acts with Terese.

However, Penal Code section 311.11(a) (see fn. 7, *ante*) requires proof that the defendant *knowingly* possessed or controlled child pornography.  Specifically the operative language of that subdivision, as pertinent here, provides it is a criminal offense for any person to "*knowingly possess*[] *or control*[] *any matter, representation of information, data, or image, including, but not limited to, any . . . computer-generated image* that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, *knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct . . . .*"  (Pen. Code, § 311.11(a), italics added.)

Thus, by its plain language Penal Code section 311.11(a) prohibits either possession or control of any child pornography "matter, representation of information, data, or image" when the person possessing or controlling the matter does so with "know[ledge] that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct . . . ."  (Pen. Code, § 311.11(a); see *Tecklenburg v. Appellate Division* (2009) 169 Cal.App.4th 1402, 1418.)  The nonexclusive language that follows the phrase "including, but not limited to" then "describes numerous forms and methods by which such child pornography may be distributed, including not just

20

physical storage devices, but any 'computer-generated image.'" (*Tecklenburg*, at p. 1418, italics added by *Tecklenburg*; see Pen. Code, § 311.11(a).)

Here, the prosecution's evidence that Burke knowingly possessed or controlled the two thumbnail images found on the hard drive of his computer was speculative at best, and, thus, the record shows there is an almost negligible degree of certainty that Burke committed a violation of Penal Code section 311.11(a). At the hearing on the People's motion in limine to admit the challenged section 1108 evidence, the prosecutor acknowledged that "no expert can testify as to how the images got on the computer," and that the prosecution's expert "can't say for sure that they were viewed." Later, at trial, Detective Provence ─ the prosecution's expert witness who forensically examined Burke's computer ─ testified that, due to the location of the images in unallocated space on the hard drive of the computer, it was not possible to determine whether the images were ever viewed, or when the image files were accessed, or how or when the images arrived on the computer.

Burke's forensic expert, Roloff, similarly testified that "[u]sually very little" can be determined about a file that is in the unallocated file space. Roloff explained that unallocated file space is "the area of the computer that's either been unused or at some point in time had a file there in that location that just is no longer being accessed or acknowledged by the operator system." Roloff testified that the user of the computer is unable to access this unallocated space without specialized software or knowledge, and he did not see such specialized software on Burke's computer. Roloff also testified that

21

there was no evidence Burke or any other user of his computer knew about or had intentionally sought out the images of child pornography found on the computer.

Even the court, when asked by defense counsel during the in limine hearing whether it found "some evidence that Mr. Burke may have put these photos in the unallocated space," replied it was *not* making such a finding, and then stated, "I don't think a computer expert can make it, and I certainly can't."

Despite the parties' offers of proof indicating a dearth of evidence that might show Burke knowingly possessed or controlled the two images of child pornography, and despite the defense's offer of proof that other people had access to and used the computer which was not password protected,[8] the court specifically found that Burke's mere "access" to, and "possession and control" of, the *computer* was "sufficient" under section 1108 and 352 to allow the prosecution to present to the jury the two thumbnail images and related forensic evidence, all of which the court determined was "probative." In making this finding, however, the court disregarded the plain language of Penal Code section 311.11(a) requiring proof that the defendant (here, Burke) possessed or controlled

---

[8]    In his in limine motion, Burke asserted that "Mrs. Burke and others will testify that visitors used this computer over the years. One of the individuals who visited the Burkes frequently and used the computer in the guest bedroom, was [Terese's] father, . . . who was convicted of unlawful sexual intercourse with a minor ([Pen. Code, § 261.5(c)])." In support of his motion, Burke submitted copies of records of the Riverside County Superior Court from 2008 and 2009 showing Terese's father was convicted of multiple counts of unlawfully having sexual intercourse with a minor in 2008 as charged in a felony complaint filed in November of that year. At trial, Burke's wife, Debra, testified that the computer in question was not "password protected" and her sister's two sons had access to that computer and played games on it. The court, of course, had not yet heard Debra's testimony when it ruled on the parties' in limine motions.

22

the proscribed child pornography matter "*knowing* that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct."  (Pen. Code, § 311.11(a), italics added.)

Our conclusion that the probative value of the challenged section 1108 propensity evidence was de minimus finds support in the Court of Appeal's decision in *Tecklenburg v. Appellate Division*, *supra*, 169 Cal.App.4th 1402.  There, the defendant was convicted of multiple counts of knowing possession or control of child pornography (Pen. Code, § 311.11(a)) that was found on the hard drive of his family's computer, which had been kept in the kitchen and had been used by the defendant, some of his children, and possibly his wife.  (*Tecklenburg*, pp. 1404-1405, 1407.)  The defendant appealed, claiming there was insufficient evidence to show he personally possessed the child pornography files found on the computer.  (*Id*. at pp. 1405-1406.)  Upholding the convictions, the Court of Appeal concluded that evidence showing the defendant used the computer and was its registered owner was not "sufficient alone" to show he was the person who searched the Internet and accessed the child pornography images found on the computer.  Specifically, the *Tecklenburg* court stated:

> "[T]he child pornography found on the home computer did not appear to be the result of accidental or mistaken Internet use or involuntary computer pop-ups.  *Defendant was one of the users of the home computer.  He was the registered owner of that computer.  This, of course, would not be sufficient alone to show he was the person who had entered the word searches or Web site addresses or accessed the Internet images and graphics found on the home computer*."  (*Id*. at p. 1413, italics added.)

23

The *Tecklenburg* court determined, however, that this evidence, *together with other circumstantial evidence* showing it was the defendant who searched the Internet and accessed the child pornography Web sites and images, was sufficient to support the jury's finding that the defendant had knowingly possessed or controlled the child pornography on the home computer. (*Tecklenburg*, *supra*, 169 Cal.App.4th at pp. 1413-1414.) Specifically, a prosecution expert testified that a search engine Web page with a "softcom" banner at the top of the page and the word "insest" placed in the search box was found on the computer. The expert identified the misspelling of "incest" as "insest" as a way to get child pornography past computer filters and firewalls designed to keep pornography from being delivered to the computer. (*Id*. at pp. 1408 & fn. 9, 1413.) The expert testified that, of the family users' email addresses, only the defendant's email address was at "softcom.net." (*Id*. at pp. 1409, 1413.) The prosecution also presented evidence that when a detective interviewed the defendant regarding the child pornography found on his home computer, the defendant admitted he had visited pornographic Web sites, and, although the defendant denied accessing child pornography, he kept saying that "if it popped up,[9] I couldn't help it," and also made the spontaneous statement: "My life is over." (*Id*. at pp. 1409, 1413.)

Here, there was no such additional evidence—that is, evidence other than the evidence showing Burke possessed and was one of the users of the computer, and that he was its registered owner—that would tend to show he used the computer to search the

9       "Popups are unrequested images or advertisements that appear on the Web site screen." (*Tecklenburg*, *supra*, 169 Cal.App.4th at p. 1408. fn. 8.)

24

Internet and access child pornography Web sites and images, and, thus, that he *knowingly* possessed or controlled the two thumbnail child pornography images at issue here, as required by Penal Code section 311.11(a).

Our conclusion also finds support in *United States v. Flyer*, *supra*, 633 F.3d at p. 919, which involved a conviction under the federal child pornography statute (18 U.S.C. § 2252(a)(4)(B) & (b)(2)) for knowing possession of child pornography found on the unallocated space of the hard drive in the computer the defendant used in his bedroom. (*Flyer*, at pp. 913-914, 918.) The United States Court of Appeals for the Ninth Circuit reversed the conviction, explaining that the government conceded it presented no evidence that Flyer knew of the presence of the files on the unallocated space of his computer's hard drive, that he had the forensic software required to see or access the files, or that he had accessed, enlarged, or manipulated any of the charged images. (*Id*. at p. 919.) The *Flyer* court concluded that "[n]o evidence indicated that . . . Flyer could recover or view any of the charged images in unallocated space or that he even knew of their presence there." (*Id*. at p. 920.)

Here, as discussed, *ante*, there also is no such evidence. For all of the foregoing reasons, we conclude the probative value of the challenged section 1108 propensity evidence was de minimus.

*Inflammatory nature of the section 1108 evidence and its likely prejudicial impact*

Regarding the nature of the challenged section 1108 evidence, Burke asserts the evidence of the thumbnail images was "highly inflammatory." The Attorney General claims the evidence was "not inflammatory" because "[n]either of the images displayed

25

sexual acts" and, "[t]hus, while the images tended to establish a prurient interest in prepubescent girls, they did not create a substantial risk of evoking a visceral reaction from the jury."

In evaluating section 1108 propensity evidence, the court must determine whether the evidence of defendant's uncharged acts was no stronger and no more inflammatory than the evidence concerning the charged offenses. (*People v. Miramontes*, *supra*, 189 Cal.App.4th at p. 1097; *People v. Harris*, *supra*, 60 Cal.App.4th at pp. 737-738.)

Here, while the thumbnail images do show young girls in sexually suggestive poses displaying their genitalia in whole or in part, neither girl is depicted engaging in a sexual act. Thus, the section 1108 propensity evidence at issue in this appeal was no stronger and no more inflammatory than Terese's explicit testimony (discussed, *ante*, in the factual background) regarding the acts of sexual molestation Burke was convicted of committing in this matter.

However, our analysis does not end here. As already noted, section 1108 evidence should be excluded as unduly prejudicial under section 352 when it is of such nature as to inflame the emotions of the jury, motivating them to use the information to reward or punish one side because of the jurors' emotional reaction to that evidence. (*People v. Branch*, *supra*, p. 286.) Under the particular circumstances of this case, we conclude that, although the two images of child pornography presented to the jury were no more inflammatory than Terese's testimony concerning the charged sexual offenses Burke allegedly committed in this matter, the admission of the images nevertheless did create a substantial risk of evoking a negative visceral reaction from the jury. As the Attorney

26

General acknowledges, the images tended to establish that Burke had a prurient interest in prepubescent girls. The question of his guilt or innocence with respect to the charged offenses was a close issue, as evidenced by the fact that although the jury convicted him of two of the eight counts charging him with commission of a lewd act upon a child under the age of 14, it was unable to reach a verdict on the other six counts. The admission of the thumbnail images of young girls displaying their genitalia in whole or in part while posing in a sexually suggestive manner created a substantial risk of inflaming the emotions of the jurors.

*Probability of jury confusion*

The next factor—confusion of issues—is more difficult to assess. As noted above, section 352 permits the exclusion of evidence if its probative value is outweighed by the probability that its admission will create a substantial danger of "confusing the issues."

Here, Burke complains that the section 1108 evidence concerning his alleged possession of the two thumbnail images "formed a basis for a conviction without appropriate jury focus and attention to Terese's allegations." The result of the admission of this evidence, he asserts, was a "distracting mini-trial" on the issue of the thumbnails. Noting that the prosecutor acknowledged during the in limine hearing that an expert could not say how the images got into the unallocated space on the hard drive of Burke's computer, and could not determine whether they were ever viewed, Burke also maintains this evidence would confuse a jury because "there was no evidence [he] even knew of the existence of the thumbnails."

27

We conclude this factor militates against admission of the challenged section 1108 evidence, as Burke has shown a probability the admission of that evidence created a substantial danger of confusing, misleading, or distracting the jurors from their main inquiry as framed by the charges and allegations brought against him in the information. The testimony of one of the prosecution's five witnesses ─ Detective Provence, a computer forensics examiner ─ specifically related to his examination of the two computers seized from Burke's home, the images found on the unallocated space of the hard drive in Burke's computer, and the issue of whether Burke knowingly possessed or controlled those images. The testimony (discussed, *ante*) of the remaining four prosecution witnesses—Terese, her mother, Detective Ward, and forensic interviewer McLennan—pertained to the molestation charges and the response of law enforcement to Terese's reporting of the alleged molestation.

In response to the prosecution's presentation of Detective Provence's expert testimony, the defense presented the testimony of its own expert, Roloff, a digital forensic examiner. After the parties rested their cases, the court instructed the jury that "[t]he People have presented evidence that [Burke] committed the crime of possession of child pornography that was not charged in this case. . . . You may consider this evidence only if the people have proved by a preponderance of the evidence that [Burke], in fact, committed the uncharged offense." In their closing arguments, the prosecutor and defense counsel addressed the issues raised by the section 1108 evidence.

In essence, the admission of the section 1108 propensity evidence, including the two thumbnail images, resulted in a mini-trial on the issue of whether Burke knowingly

possessed or controlled those images, and thereby created a substantial danger of distracting the jury from the issue of Burke's guilt or innocence with respect to the charged sex offenses. As Burke was not charged in this case with unlawful possession of child pornography, some degree of danger was created that the jury may have wanted to punish him for that uncharged act.

*Remoteness*

The next factor—remoteness of the claimed uncharged offense (here, knowing possession or control of child pornography)—does not weigh in favor of, or against, admission of the section 1108 evidence because there is no evidence to show when or how the thumbnail images were downloaded to the unallocated hard drive space of Burke's computer.

*Consumption of time and the defense burden in defending against the claimed uncharged offense*

The final pertinent section 352 factors are the consumption of time involved in litigating the question of whether Burke committed the uncharged offense of knowingly possessing or controlling the two thumbnail child pornography images, and the defense burden in defending against the prosecution's claim he committed that uncharged offense. These factors militate against admission of the section 1108 evidence. The record shows a relatively substantial amount of court time was consumed in the examination of the parties' computer forensics experts and the closing arguments relating to the claimed uncharged offense. The burden to the defense was also substantial because litigation of the issue of whether Burke knowingly possessed or controlled the two images found in

29

the unallocated space of the hard drive in his computer required an understanding of relatively complicated computer technology, and the ability to present and challenge expert computer forensics testimony and communicate clearly to the jury with respect to the scientific analyses performed by those experts.

*Conclusion*

Although one of the pertinent section 352 factors—remoteness—does not weigh in favor of, or against, admission of the section 1108 evidence, all of the other pertinent factors militate against admission:  The evidence was inflammatory, virtually irrelevant, and likely to confuse the jury and distract it from consideration of the charged offenses, and its admission resulted in the consumption of a substantial amount of court time and imposed a substantial burden on the defense in defending against the prosecution's claim he committed the uncharged offense of knowingly possessing or controlling child pornography.  We conclude the court prejudicially abused its discretion by admitting the two thumbnail images and related evidence under sections 1108 and 352, as the de minimus probative value of this inflammatory evidence was substantially outweighed by the probability that its admission would necessitate undue consumption of time and create a substantial danger of undue prejudice and of confusing the issues.

"Absent a 'miscarriage of justice,' we may not reverse a judgment."  (*People v. Harris*, *supra*, 60 Cal.App.4th at p. 741, quoting Cal. Const., art. VI, § 13.)  The Attorney General does not argue that the error was harmless.  In light of the prejudicial nature of the essentially irrelevant section 1108 propensity evidence, the inconsistencies between Terese's trial testimony and her recorded and transcribed statements to the police during

30

her March 2009 interview, and the closeness of the issue of Burke's innocence or guilt with respect to the charged offenses, we are persuaded the error was prejudicial. Absent the admission of this evidence, it is "reasonably probable" the jury would have acquitted him. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) Accordingly, we reverse the judgment and remand the matter to the trial court for a new trial.

DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for a new trial.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

31